United States Court of Appeals
Fifth Circuit

**F I L E D**

December 17, 2003

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-30665

Summary Calendar
_____

SANDRA LYNN NOTO

                    Plaintiff - Appellant

v.

REGIONS BANK

                    Defendant - Appellee

_____

Appeal from the United States District Court
for the Middle District of Louisiana, Baton Rouge
No. 02-CV-207-M1

_____

Before KING, Chief Judge, and DAVIS and BARKSDALE, Circuit

Judges.

PER CURIAM:[*]

    Sandra Lynn Noto brought suit against her former employer,

Regions Bank ("Regions"), claiming that she had been sexually

harassed by her supervisor at Regions, Paula Faron, and that she

had been terminated in retaliation for her complaints about

---

    [*]    Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

1

Faron.  Noto also claimed that Regions had intentionally inflicted emotional distress upon her.  A magistrate judge granted summary judgment to Regions on all claims.  For the following reasons, we AFFIRM.

## I.    FACTUAL AND PROCEDURAL HISTORY

### A.    Facts

Sandra Lynn Noto worked for Regions as a Loan Assistant from 1995-1996 and again from 1999 until her termination in June 2001.  In January 2001, Noto was assigned to work under Loan Officer Paula Faron.  Noto describes Faron as a demanding supervisor who was neither respectful nor professional in her dealings with Noto.

According to Noto, Faron touched her in ways that made her uncomfortable.  On five or six occasions, Faron hugged Noto with one arm and, once, Faron hugged her with both arms.  Faron also occasionally kissed Noto on the cheek.  Furthermore, Faron would sometimes end conversations with Noto by saying "I love you."  Noto admits that she does not know whether Faron is a lesbian, but says that Faron told her that she had gay friends.

Noto alleges that she informed Faron that Faron's behavior made her uncomfortable and embarrassed.  Noto also complained about Faron's treatment of her to Faron's superiors and to Regions's Human Resources Department.  In these discussions, however, she characterized Faron's behavior as unprofessional,

not as sexual or discriminatory.

Regions presented evidence, which was uncontradicted by Noto, that Faron is generally an affectionate and demonstrative person. In affidavits, Regions's employees--both male and female--say that Faron hugged them and kissed them on the cheek from time to time. Furthermore, theses affidavits reveal that Faron told Loan Assistants of both genders "You're the greatest" or "I love you" when the Assistants helped her with job-related tasks. Faron explains in her affidavit that she is naturally effusive and that her hugs, kisses, and "love ya's" are not meant to be offensive or sexual.

Faron, for her part, found it difficult to work with Noto. She describes Noto as uncooperative, obstructionist, and unhelpful. A few days before Noto was fired, Faron suggested to Noto that she resign. Noto, however, did not want to leave Regions; according to Noto, she was willing to continue working with Faron.

Ultimately, Jim Greely, President of Regions, Janet Lucia, Director of Human Resources, and Faron decided to terminate Noto from her position at the bank. According to Greely, they made this decision after Noto refused on several occasions to ensure that the documentation necessary to close on loans was timely prepared, and because she demanded twenty-four hours notice from Faron if Faron needed her to do anything. Greely, Lucia, and Faron all claim that they did not fire Noto--or take any other

3

action--with the intention of upsetting her.

**B.    Procedural History**

Noto brought suit against Regions for (1) sexual harassment in violation of both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 (2000), and LA. REV. STAT. ANN. § 23:332 (West 1998); (2) intentional infliction of emotional distress, in violation of Louisiana law; and (3) retaliatory discharge, in violation of LA. REV. STAT. ANN. § 23:967 (West 1998).  Both parties consented to have the case heard by a magistrate judge. Regions moved for summary judgment, which was granted.  In his ruling, the magistrate judge found that Noto had not offered sufficient evidence to establish essential elements of her claims.  Noto, now <u>pro se</u>, appeals.

## II.    DISCUSSION

**A.    Standard of Review**

This court reviews grants of summary judgment <u>de novo</u>.  <u>La Day v. Catalyst Tech., Inc.</u>, 302 F.3d 474, 477 (5th Cir. 2002). Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); <u>see</u> <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  In analyzing the record, we view the evidence in the light most favorable to the nonmoving party.  <u>La Day</u>, 302 F.3d at 477.

4

**B.    Analysis**

**1.    Sexual Harassment**

We turn first to Noto's claim of sexual harassment under Title VII and LA. REV. STAT. ANN. § 23:332.  Because the Louisiana statute is "substantively similar" to Title VII, the outcome is the same under both.  Id. at 477 (internal quotation marks omitted).  Thus, we analyze Noto's claim under the relevant federal precedents.  Id.

A plaintiff alleging same-sex sexual harassment under Title VII must demonstrate, first, that she was harassed based on sex. Id. at 478.  If this showing is made, the plaintiff must then establish that this sexual harassment constituted either quid pro quo or hostile environment harassment.  Id.  As explained below, Noto has failed to provide sufficient evidence to support a finding that she was harassed based on her sex, so we find that summary judgment on this claim was proper.

There are three methods by which a plaintiff alleging same-sex sexual harassment can show that she was harassed based on her sex:

> First, he can show that the alleged harasser made "explicit or implicit proposals of sexual activity" and provide "credible evidence that the harasser was homosexual."  Second, he can demonstrate that the harasser was "motivated by general hostility to the presence of [members of the same sex] in the workplace." Third, he may "offer direct, comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace."

5

Id. (alteration in original) (citations omitted) (quoting <u>Oncale</u>

<u>v. Sundowner Offshore Servs., Inc.</u>, 523 U.S. 75, 80-81 (1998)).

Regardless of which evidentiary route the plaintiff chooses, "she

must always prove that the conduct at issue was not merely tinged

with offensive sexual connotations, but actually constituted

discrimination because of sex."  <u>Oncale</u>, 523 U.S. at 81 (internal

quotation marks, emphasis, and ellipses omitted).

By alleging that Faron subjected Noto to unwanted sexual

advances, Noto has chosen to prove her sexual harrassment claim

through the first evidentiary route.  Accordingly, Noto must

provide evidence that Faron made "explicit or implicit proposals

of sexual activity" and provide "credible evidence" that Faron is

a lesbian.  <u>See</u> <u>id.</u> at 80.

Noto admits that Faron did not make any explicit proposals

of sexual activity, but nevertheless claims that Faron implicitly

indicated that she wanted to have sexual relations with Noto by

telling her that she had gay friends, hugging her, kissing her on

the cheek, and saying "I love you."  These actions, however, must

be placed into context.  The evidence demonstrates that Faron

hugged her co-workers and kissed them on the check as a way of

greeting them, regardless of whether they were male or female.

The evidence further shows that Faron would say "You're the

greatest" or "I love you" when receiving the assistance of either

male or female coworkers.  There is no evidence that Faron's

conduct towards her coworkers, including Noto, was in any way

6

sexually motivated.  Moreover, Noto has given no indication that Faron's behavior towards her was any different than it was towards other Regions employees.

Furthermore, there is scant evidence to prove even that Noto subjectively believed that Faron was propositioning her.  When asked whether she thought Faron was coming on to her by saying "I love you," Noto admitted: "I don't know what that meant."  In her deposition, Noto also said, regarding Faron's kisses on her cheek, "I don't know why she did that."  Not once during her deposition[1] did Noto actually claim that she had been sexually harassed by Faron.  In fact, Noto admitted that she was unsure whether Faron was even homosexual.[2]

Faron's behavior may have been overly effusive, but Title VII prohibits discrimination, not overly effusive behavior.  See Oncale, 523 U.S. at 80-81.  Noto has simply not presented enough evidence for a rational jury to conclude that Faron was homosexual and that Faron was making sexual advances on Noto. Therefore, we conclude that summary judgment was proper on Noto's sexual harassment claim under Title VII and LA. REV. STAT. ANN. § 23:332.

**2.  Intentional Infliction of Emotional Distress**

---

[1]  Noto's deposition was the only evidence she submitted to the court in support of her opposition to summary judgment.

[2]  Faron clarified in her affidavit that she is not homosexual.

Next, we consider Noto's state law claim for intentional infliction of emotional distress. In order to recover for intentional infliction of emotional distress under Louisiana law, a plaintiff must show (1) that the defendant's conduct was extreme and outrageous, (2) that the plaintiff suffered severe emotional distress, and (3) that the defendant either desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from her conduct. La Day, 302 F.3d at 483-84; White v. Monsanto Co., 585 So. 2d 1205, 1209 (La. 1991). In considering whether these elements have been met, Louisiana courts have admonished that, "[a] plaintiff's status as an employee may entitle him to a greater degree of protection from insult and outrage by a supervisor with authority over him than if he were a stranger." White, 585 So. 2d at 1210.

It is true that Noto's allegations are based on her supervisor's behavior and that Noto is therefore entitled to greater protections under the law. Even so, the evidence provided is insufficient for a finding in favor of Noto on her claim of intentional infliction of emotional distress.

First, the evidence does not demonstrate that Faron's conduct was "extreme and outrageous." For conduct to rise to this level, it "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable

8

in a civilized community." Id. at 1209. "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not give rise to liability. Id. Faron's conduct clearly does not reach this level. Hugs, kisses on the cheek, and other demonstrations of affection seem to be the types of "annoyances" or "indignities" that the Louisiana courts have held to be insufficient to support a finding of liability.

Second, there is no evidence in the record that Noto suffered severe emotional distress as a result of Faron's actions. According to the Louisiana courts, the plaintiff's distress must be so severe "that no reasonable person could be expected to endure it." Id. at 1210. The evidence shows that Noto was made uncomfortable and embarrassed by Faron's behavior, but there is no evidence that Noto's discomfort was insufferable. Noto admits that Faron's demonstrations did not make her angry or even cause her to cry. Nor was she in any way incapacitated by Faron's behavior. In fact, Noto wanted to continue working for Faron and contends that she would have done so, had she not been fired. This evidence does not reveal the kind of severe emotional trauma necessary to sustain a cause of action for intentional infliction of emotional distress under Louisiana law.

Third, Noto has presented no evidence that Faron either desired to inflict severe emotional distress on her or knew that severe emotional distress was certain or substantially certain to result from her actions. "[T]he mere fact that the actor knows

9

that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough. . . . The conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like." Id. It is true that Faron knew that her demonstrations were unwelcome. However, there is no indication that Faron knew that her actions would cause Noto severe emotional distress or intended for her actions to do so. Regions provided evidence, which was not contradicted by Noto, that Faron took no action with the intention of upsetting Noto. Furthermore, the types of things Faron was doing--hugging Noto, kissing her on the cheek, saying "I love you"--are not the kinds of things one would predict would cause a person extreme emotional distress.

For these reasons, we hold that the magistrate correctly dismissed Noto's state law claim of intentional infliction of emotional distress.

### 3. Retaliatory Discharge

Finally, we address Noto's claim for retaliatory discharge in violation of Louisiana's "whistle-blower" statute, LA. REV. STAT. ANN. § 23:967. The statute provides that:

An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
(1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
(2) Provides information to or testifies before any

10

> public body conducting an investigation, hearing, or inquiry into any violation of law.
>     (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

LA. REV. STAT. ANN. § 23:967A. Under this statute, an employee is protected from reprisal only if the employer actually committed some "'violation of state law.'" Nolan v. Jefferson Parish Hosp. Serv. Dist. No. 2, 01-175, p. 11 (La. App. 5 Cir. 6/27/01); 790 So. 2d 725, 732 (quoting LA. REV. STAT. ANN. § 23:967A).

Noto alleges that she was sexually harassed by her supervisor at Regions, in violation of Title VII and LA. REV. STAT. ANN. § 23:332, and that she was terminated by Regions in retaliation for her complaints about this supervisor. As explained above, there is insufficient evidence to conclude that Faron sexually harassed Noto, and thus that Regions is liable under Title VII or Louisiana law. Noto cannot, therefore, establish an essential element of her claim under LA. REV. STAT. ANN. § 23:967. Consequently, we hold that summary judgment on this claim was proper.

## III. CONCLUSION

Accordingly, we AFFIRM the grant of summary judgment in favor of Regions.

11