Harriet **TAINSKY**, Plaintiff,

v.

**CLARINS USA, INC., Groupe Clarins, USA, d/b/a Clarins and Cathy Lawrence, Defendants.**

**No. 02 CIV. 9286(CM).**

United States District Court, S.D. New York.

March 14, 2005.

Michael A. Koplen, Nanuet, NY, for Plaintiff.

Joan M. Gilbride, Kaufman, Borgeest & Ryan, Valhalla, NY, for Defendants.

## MEMORANDUM DECISION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

MCMAHON, District Judge.

Plaintiff, Harriet Tainsky, filed a charge of unlawful discrimination with the Equal Opportunity Employment Commission ("EEOC") against her employer Clarins

USA, Inc. ("Clarins") in January 2002. The EEOC, on July 2002 issued a Letter of Determination, which found that there was "reasonable cause to believe that [Plaintiff] was sexually harassed and subjected to a hostile working environment in violation of Chapter VII." Plaintiff thereafter filed this action against Clarins—Clarins USA, Inc. and something called "Groupe Clarins, USA, d/b/a Clarins"[1] (collectively, "Clarins")—and Cathy Lawrence, Director of Operations of Clarins and Plaintiff's direct supervisor ("Lawrence").

Plaintiff brings this action seeking compensatory and punitive damages against Defendants Clarins and Cathy Lawrence, alleging sexual harassment, hostile work environment and retaliation in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.). Additionally, Plaintiff alleges a claim against Clarins for negligent supervision of Lawrence.

Defendants have moved for summary judgment requesting that Plaintiff's claims be dismissed in their entirety with prejudice.

For the following reasons, Defendants' motion is granted in part and denied in part.

**Background**

The following facts are undisputed.

On October 4, 1999, Lawrence hired Plaintiff as her administrative assistant. (Def. Rule 56.1 ¶ 3.) Plaintiff's responsibilities included, but were not limited to, approving and coding warehouse invoices, communicating with vendors and attending staff meetings. (*Id.* at ¶ 4.) Lawrence completed a performance evaluation of Plaintiff for the period from October 1999 through December of 2000. (*Id.* at ¶ 5.)

Clarins used a scale of "1" to "5" for evaluating its employees, with "1" being "unacceptable," "3" meaning "meets expectations" and "5" meaning "outstanding." (Pl. Rule 56.1 ¶ 54.) Lawrence gave Plaintiff a score of 3.5. (*Id.* at ¶ 54.) The evaluation also noted that Plaintiff should improve her computer skills, efficiency and productivity, and that she should process invoices within three days from the day they were received. (Def. Rule 56.1 ¶ ¶ 8, 9, 10.) As a result of this evaluation, plaintiff received a raise approved by Lawrence. (Pl. Rule 56.1 ¶ 61.)

During the course of Plaintiff's employment, Lawrence gave Plaintiff some gifts. (Def. Rule 56.1 ¶ 12.) On one occasion, Plaintiff applied lotion to Lawrence's back where she had been stung by a bee. (*Id.* at ¶ 14.) On another occasion, Lawrence searched through Plaintiff's garbage. (*Id.* at ¶ 15.) Other allegations of inappropriate conduct, discussed below, are disputed.

The parties agree that Plaintiff repeatedly complained verbally about Lawrence's conduct to other supervisors. (*Id.* at ¶ ¶ 16, 17.) One of the conversations was recorded. (*Id.* at ¶ 18.) On July 26, 2001 Lawrence terminated Plaintiff's employment. (*Id.* at ¶ 33.)

Almost everything else that is relevant to a determination of the principal claims in suit is disputed.

Plaintiff alleges that beginning in February 2000, she was subjected to sexual harassment by Lawrence. (Pl. Rule 56.1 ¶ 1.) Herewith, a partial list of the instances of allegedly harassing behavior:

- On several occasions, Lawrence allegedly looked at "improperly" and

---

1. I have no idea whether this is an entity separate and apart from Clarins USA, Inc., the admitted employer of Plaintiff. Defendants' brief is not especially enlightening on this point.

touched Plaintiff's hair, ears, legs and breasts. (*Id.* at ¶¶ 5, 6, 9, 10.)

• Plaintiff claims Lawrence attempted to kiss her on the mouth on at least two occasions. (*Id.* at ¶ 2.)

• Allegedly, Lawrence made frequent verbal references to Plaintiff's body, saying that Plaintiff has "really nice breasts" and she could imagine what Plaintiff looked like in a bathing suit. (*Id.* at ¶ 11.)

• Plaintiff claims Lawrence frequently adjusted Plaintiff's bra strap and rubbed Plaintiff's shoulders and back. (*Id.* at ¶¶ 8, 24.)

• On a few occasions, Lawrence massaged Plaintiff's back as Plaintiff sat at her desk (*Id.* at ¶ 7.)

• Plaintiff claims that on one occasion, Lawrence lifted Lawrence's shirt, exposing the front part of Lawrence's body to Plaintiff, and insisted Plaintiff rub lotion on a bee sting bite on her back. (*Id.* at ¶ 12.)

• Plaintiff asserts that Lawrence disapproved of her having lunch with two former female employees of Clarins and threatened Plaintiff with "suffering unspecified consequences." (*Id.* at ¶ 14.)

• Plaintiff alleges that Lawrence invited her to accompany Lawrence to Lawrence's house in June 2000, telling her, "We will be alone." (*Id.* at ¶ 17.)

• Plaintiff maintains that on one occasion, Lawrence rifled through her pocketbook in the office. (*Id.* at ¶ 33.)

• While discussing a work-related incident with a contractor, Plaintiff claims Lawrence asked Plaintiff to repeat the word "fuck" and then told Plaintiff, "You are so cute" and "I love you." (*Id.* at ¶ 13.) On several other occasions, Lawrence told Plaintiff, "I love you," "You know I cannot live without

you," and "You should never leave me, Harriet." (*Id.* at ¶ 15.)

• Plaintiff maintains that Lawrence showed Plaintiff some pornography on Lawrence's computer at work. (*Id.* at ¶ 30.)

• During a meeting in Lawrence's office, around March 2001, Lawrence placed her hand on Plaintiff's inner thigh and slid it up under her skirt. (*Id.* at ¶ 20.) After this incident, Plaintiff claims that she told Lawrence that she did not have "the same feelings" for Lawrence and that Lawrence allegedly replied that she understood. Plaintiff claims that after this incident, in or about April 2001, Lawrence's attitude toward Plaintiff became hostile. (*Id.* at ¶¶ 20, 38.)

Plaintiff claims that Lawrence's conduct amounted to sexual harassment, which caused her to suffer great stress and physical reactions, including nose bleeds and acid reflux. (Pl. Rule 56.1 ¶ 23.)

Plaintiff claims that she complained to Human Resources personnel at Clarins about sexual harassment and abuse on June 14, 2001 and on July 23, 2001 to Mr. Rosenblum, vice-president of Clarins. (*Id.* at ¶¶ 39, 40.) According to Plaintiff, Human Resources personnel advised that if she made formal complaint, she would lose her job. (*Id.* at ¶ 43.) Plaintiff was fired on July 26, 2001, and she claims that the main reason was her complaint to the appropriate staff. (*Id.* at ¶¶ 44, 66.)

Defendants dispute essentially all of Plaintiff's factual allegations. They claim that, as a matter of law, no sexual harassment occurred. (Defendant's Memorandum of Law in Support of Motion for Summary Judgment, dated Nov. 25, 2003, at pp. 4–5.)

## Standard for Summary Judgment

Rule 56(c) provides that summary judgment shall be granted where there is no "genuine issue as to any material facts and [...] the moving party is entitled to judgment as matter of law," that is, where the party opposing summary judgment "fails to make a showing sufficient to establish the existence of an element essential to the party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Thus, a party opposing summary judgment must point to "specific facts showing that there is a genuine issue for trial," by proffering "significant probative evidence tending to support [its] complaint." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (citations omitted). The non-movant "may not rest upon the mere allegations or denials of [its] pleadings," Fed.R.Civ.P. 56(e), or upon "mere speculation or conjecture as to the true nature of the facts." *Fletcher v. Atex, Inc.,* 68 F.3d 1451, 1456 (2d Cir.1995).

## Same–Sex Harassment

■ To prevail on a Title VII same-sex harassment claim, a plaintiff must prove that: (1) "the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimination ... because of sex," and (2) the conduct was severe or pervasive enough to create an objectively hostile or abusive work environment. *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 80, 118 S.Ct. 998, 1001, 140 L.Ed.2d 201 (1998) (citing *Harris v. Forklift Sys.,Inc.,* 510 U.S. 17, 25, 114 S.Ct. 367, 372, 126 L.Ed.2d 295 (1993)).

In *Oncale,* the Supreme Court held that gender-based discrimination in a same sex harassment case can be shown by one of the following:

1. evidence that the harasser is homosexual and that the harassment is motivated by sexual desire;

2. evidence that the harasser was motivated by general hostility to employees of victim's sex; or

*3.* comparative evidence that the harasser treated employees of both sexes differently. *Ciccotto v. LCOR, Inc.,* 2001 WL 514304, *4 (S.D.N.Y.2001) (citing *Oncale,* 523 U.S. at 81, 118 S.Ct. 998).

■ Plaintiff is alleging homosexually-oriented harassment motivated by sexual desire. According to *Oncale,* an inference of homosexuality can be established by presenting evidence that (1) the alleged harasser intended to have some kind of sexual contact with the plaintiff, or (2) the alleged harasser made same-sex sexual advances to others, especially to other employees. *Moran v. Fashion Inst. Of Tech.,* 2002 WL 31288272, * 5 (S.D.N.Y.2002) (citing *La Day v. Catalyst Tech., Inc.,* 302 F.3d 474 (5th Cir.2002)). Plaintiff has alleged conduct by Lawrence that, if true, would support a finding of homosexual sexual harassment under the first of the two *Oncale* standards. She has alleged repeated instances of unwanted physical contact foisted upon her by Lawrence and repeated unwanted attempts by Lawrence to get her alone in social/sexual situations. Lawrence denies that these things happened, or claims that her behavior has been mischaracterized. I cannot resolve that dispute at this stage, and I cannot dismiss the sexual harassment claim against Clarins without resolving the dispute.

■ The second condition of the *Oncale* standard requires proof that the conduct was "severe or pervasive enough to create an objectively hostile or abusive work environment." *Oncale,* 523 U.S. at 80, 118 S.Ct. 998 (citing *Harris,* 510 U.S. at 21,

114 S.Ct. 367) (internal reference omitted). In deciding whether a plaintiff has established a hostile work environment, courts examine "the frequency, severity, nature of the conduct, whether it interfered in Plaintiff's work performance, and the psychological harm that resulted." *Ciccotto*, 2001 WL 514304 at * 5 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)). According to *Oncale*, Plaintiff's accusations "should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Oncale*, 523 U.S. at 75, 118 S.Ct. 998.

■ Plaintiff's allegations, if true, clearly qualify as "pervasive" within the meaning of *Oncale*. The frequency and nature of that behavior allegedly caused plaintiff to change her dress habits and interfered with her ability to do her job. The allegations of "jealous" and "possessive" behavior also support this conclusion, such as (i) when Lawrence allegedly disapproved of Plaintiff having lunch with two former female employees of Clarins, (ii) Lawrence's allegedly rifling through Plaintiff's pocketbook and waste paper basket, and (iii) Lawrence's alleged excessive interest in who Plaintiff spoke with over the phone. (Pl's. Mem. at 13.)

■ Summary judgment would thus be inappropriate on plaintiff's Title VII sexual harassment claim insofar as it is alleged against Clarins. However, the claim must be dismissed against Lawrence, since Title VII claims lie only against the employer, not against the employee who allegedly did the harassing. *Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir.1995); *see also, e.g.,* *Nadimi v. Brown*, 8 Fed.Appx. 122, 124–25 (2d Cir.2001).[2]

### Retaliation

■ In order for a plaintiff to establish a prima facie case of retaliation, she must show that (1) she engaged in a protected activity under Title VII; (2) that the employer was aware of this activity; (3) that the employer took adverse action against the plaintiff; and (4) that a causal connection exists between the protected activity and the adverse action. *Moran v. Fashion Inst. of Tech.*, 2002 WL 31288272 at * 5 (S.D.N.Y.2002) (citing *Fitzgerald v. Henderson*, 251 F.3d 345, 358 (2d Cir. 2001)).

■ "Protected activity refers to action taken to protest or oppose the alleged discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir.2000). The employee does not have to demonstrate that the conduct complained about actually violates Title VII, but only that she "was acting under a good faith, reasonable belief that a violation existed." *Sumner v. United States Postal Service*, 899 F.2d 203, 209 (2d Cir.1990).

■ In this case, Plaintiff claims she complained to Human Resources and upper management about Lawrence's behavior, because she reasonably believed that there was an ongoing violation of her rights. It is undisputed that Clarins was informed about the tension between Plaintiff and Lawrence, although the parties disagree about what plaintiff actually said in her complaints. Plaintiff claims that she followed the procedure set forth in the Clarins Handbook, (Pl. Rule 56.1 ¶ 47), and that she was advised by Human Resources

---

**2.** I do not understand the repeated references to Ms. Lawrence in her "individual capacity." This is not a claim brought pursuant to 42 U.S.C. § 1983, where an individual can be sued in both his individual capacity and in his official capacity as a representative of the state. Clarins is a private enterprise. Lawrence is a Clarins employee. She cannot be sued in any capacity under Title VII.

personnel not to make a formal complaint because she would lose her job. (*Id.* at ¶ 43.) Defendants, on the other hand, state that Plaintiff did not follow the procedure and never clearly verbalized a sexual harassment complaint. (Def. Rule 56.1 ¶¶ 17, 19, 20, 21, 34.) Resolution of that issue, like all the disputed issues of fact in this case, must abide a trial.

■ Defendants further claim that Plaintiff's termination was directly caused by Plaintiff's poor work performance including: inefficiency, lack of improvements, gossiping and abusing the email system. (Def.s' Mem. at 18, 20, 21.) Defendant has indeed articulated a non-retaliatory reason for firing plaintiff, thereby satisfying its burden of production at the second stage of a classic *McDonnell Douglas* analysis. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Donato v. Plainview–Old Bethpage Cent. School Dist.,* 96 F.3d 623, 633 (2d Cir.1996). But there are genuine issues of disputed fact concerning the *bona fides* of that explanation. Besides comments on the evaluation that was above average, there is no record of any written warning given to Plaintiff regarding her performance, (Pl. Rule 56.1 ¶ 58), nor any indication of criticism in Plaintiff's personal files. (Pl. Rule 56.1 ¶ 64.) Although Clarins has a policy requiring communication to an employee of any deficiencies, Plaintiff claims that she never received a "write-up" nor any verbal warnings from Lawrence. (Pl. Rule 56.1 ¶ 65.) Plaintiff alleges that there is no express evidence to support Defendants' claim that Plaintiff was fired for cause, and that the real reason for her termination was Plaintiff's complaint about Lawrence's sexual harassment. (Pl. Rule 56.1 ¶¶ 53, 54.)

Moreover, there are conflicting accounts of the alleged email abuse issue. Defendants allege that during a period of the last six months of Plaintiff's work, Plaintiff sent and received about 300 emails. (Def. Mem. at 21.) Plaintiff denies that she sent these emails and that they were discovered after her termination. (Pl. Mem. at 15.) There was no policy against sending emails during the period that Plaintiff worked at Clarins. (Pl. Mem. at 15.) The only existing written evidence of Plaintiff's work is her evaluation with the overall score of 3.5 and the comments therein. (Pl. Rule 56.1 ¶ 54.) Furthermore, there appears to have been a raise following this evaluation. These allegations might, if true, negate the assertion of poor work performance as a legitimate, non-retaliatory reason for Plaintiff termination.

Although defendants dispute the allegation that a causal connection exists between the protected activity and the adverse action, Plaintiff essentially argues that Defendants' purported reasons for firing her are pretextual, and that she was really fired for complaining about Lawrence, her supervisor. A reasonable juror could conclude that plaintiff was correct. Therefore, Clarins cannot prevail on its summary judgment motion on this claim, either—although this claim, like the sexual harassment claim, must be dismissed against Lawrence due to Title VII's limitation on individual liability.

### Negligent Supervision

In addition to her Title VII claim, Plaintiff alleges that Clarins negligently supervised Lawrence, thereby allowing the harassment to take place.

■ Under New York law, a claim of negligent supervision by an employee against her own employer is regulated by New York Workers' Compensation Law, which provides that "the right to compensation or benefits under this chapter shall be the exclusive remedy to an employ-

**586**

ee... when such employee is injured... by the negligence or wrong of another in the same employ." NY Workers' Comp. Law § 29(6) (McKinney 2005). Ordinarily, an employer cannot be held liable under New York law for negligent supervision. In particular, the mere allegation of agency and liability by way of respondeat superior is insufficient to state a claim under the Workers' Compensation Law for negligent supervision. *Hart v. Sullivan*, 84 A.D.2d 865, 445 N.Y.S.2d 40 (3d Dept. 1981). The only way in which an employer can be held liable for negligent supervision is if the employer had prior notice of an employee's assaults or other propensities and failed to take action to protect other employees. *Tomka*, 66 F.3d at 1318.

 Obviously, anything that occurred prior to the time when Tainsky complained about Lawrence cannot form the basis of a negligent supervision claim. There is no evidence in the record from which a trier of fact could find that Clarins was on notice about Lawrence's alleged sexually predatory behavior until Tainsky brought it to her employer's attention. Clarins could be liable for negligent supervision after complaints were made—provided those complaints were specific enough to alert the employer to the accused employee's misbehavior. As noted above, there is a real question about exactly what Tainsky said to representatives of Clarins, and when she said it. This, too, will have to be sorted out at trial.

### Conclusion

The Clerk of the Court is directed to grant the motion of defendant Cathy Lawrence for summary judgment and to deny the motion of defendant Clarins (by whatever name known) for summary judgment. The clerk shall not enter judgment in favor of Lawrence at this time. This case will be placed on the court's ready-for-trial list.

The parties are on notice that they may be called for trial at any time after June 15, 2005. The court will not give much notice. If anyone has any scheduling difficulties, they must be brought to the court's attention now. I will not change the trial date, once assigned, regardless of other commitments.

This constitutes the decision and order of the court.