**Revised August 19, 2002**

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

————————

m 01-31049

————————

PATRICK LA DAY,

Plaintiff-Appellant,

VERSUS

CATALYST TECHNOLOGY, INC.; AND WILLIE CRAFT,

Defendants-Appellees.

————————————

Appeal from the United States District Court
for the Middle District of Louisiana

————————————

August 15, 2002

Before DAVIS, SMITH, and BENAVIDES, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

In this title VII case of claimed same-sex harassment, Patrick La Day presented summary judgment evidence that his supervisor, Willie Craft, made obnoxious comments about La Day's sexuality, inappropriately touched a private part of La Day's body, and spat tobacco juice on him; Craft also had made crude remarks to other employees and touched them inappropriately.

The district court granted summary judgment for the defendants on La Day's same-sex sexual harassment claim. We conclude, to the contrary, that La Day

presented a fact question concerning whether Craft is homosexual and harassed him severely enough to alter the terms and conditions of employment. La Day satisfied the test for same-sex harassment outlined in *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (1998), so his title VII claim should go to the jury. We affirm, however, the dismissal of La Day's claims for unlawful retaliation, intentional infliction of emotional distress ("i.i.e.d."), and battery.

## I.
### A.

Catalyst Technology, Inc. ("Catalyst"), hired La Day to work as a reactor technician in November 1996. The three incidents that led to this suit occurred in March 1998, when La Day was assigned to work on a job in Montgomery, Alabama, under Craft's supervision.

In the first incident, Craft observed La Day sitting in a car with La Day's girlfriend and saw "passion marks" on La Day's neck. According to La Day and his girlfriend, Craft approached them and stated, "I see you got a girl. You know I'm jealous."

On a later date, La Day alleges that Craft approached him from behind while he was bending down and fondled his anus. La Day described the contact as similar to "foreplay with a woman." La Day turned around immediately and told Craft not to touch him that way because "I don't play like that." Craft laughed and walked away. That same day, La Day reported the incident to his immediate supervisor. Later that day, Craft allegedly spit tobacco on La Day's hard hat and shirt, stating "this is what I think of you."

After La Day returned from the Montgomery job, he refused to report to his next assignment because Craft was the supervisor. Catalyst initiated termination proceedings against La Day.

In May 1998, Catalyst was served with an Equal Employment Opportunity Commission complaint that La Day had filed. Catalyst began an investigation into La Day's complaint, headed by Andy Clark, the Vice President for Human Resources. The investigation revealed that two other former employees had made similar complaints against Craft.

Bernard Strange had filed a written complaint against Craft with Catalyst's personnel manager, Charlotte Valentine, alleging that Craft had asked him to sit on his lap and told him that he (Strange) had "pretty lips" and that he could "suck dick" or "suck my dick." Valentine arranged a meeting between Strange and Craft, after which Strange asked her to destroy the complaint because "it was a misunderstanding." Clark also discovered that Chad Johnson, another former Catalyst employee, had filed a complaint claiming that he was "touched in the area of his genitals by Willie Craft." The notes of Clark's investigation contain detailed information regarding these two incidents.

After the incidents with Craft, La Day worked on at least two other projects for Catalyst, neither of which involved Craft. He alleges that other Catalyst employees insulted him and generally made life difficult for him as a result of his conflict with Craft.

Eventually, La Day resigned from Catalyst because he believed that he could no longer trust his fellow employees and claims that he lost sixty pounds, began drinking heavily, and experienced other health problems. In Decem-

ber 1998, he was diagnosed with major depressive disorder with anxiety features arising from work-related issues; in 1999, he was hospitalized for depression.

### B.

La Day sued Catalyst and Craft in state court, claiming causes of action under title VII and Louisiana state sex discrimination law, a state i.i.e.d. claim against Craft, and state tort law vicarious liability claims against Catalyst. Catalyst removed the case to the federal district court, which granted summary judgment for Catalyst and Craft on all federal claims and some state claims. The court declined to exercise supplemental jurisdiction over the assault and battery claims against Craft.

### II.

A summary judgment is reviewed *de novo* under the same standard as applied by the district court. *King v. Ames*, 179 F.3d 370, 373 (5th Cir. 1999). The record is reviewed in the light most favorable to the nonmoving party, and the movant is required to "demonstrate that there are no genuine issues of material fact." *Id.* The court must consider both direct and circumstantial evidence but may not make "credibility assessments," which are the exclusive province of the trier of fact. *Dibidale, Inc. v. Am. Bank & Trust Co.*, 916 F.2d 300, 307-08 (5th Cir. 1990).

### III.

We begin by addressing La Day's claims under title VII and Louisiana antidiscrimination law. Because the relevant Louisiana statute, LA. REV. STAT. 23:332, is "substantively similar" to title VII, the outcome will be the same under the federal and state statutes. *Trahan v. Rally's Hamburgers*, 696 So. 2d 637, 641 (La. App. 1st Cir. 1997). We therefore analyze the issue under the applicable federal precedents.

### A.
#### 1.

Sexual harassment is La Day's most important sex discrimination claim. In *Oncale*, the Court reversed this circuit and held that same-sex sexual harassment is actionable under title VII, but only if the plaintiff can "prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted *discrimination* because of sex." 523 U.S. at 81 (quotations and ellipses omitted). To avoid possible misunderstanding, it is important to note that judicial inquiry into the question whether a given instance of harassment constitutes sex-based discrimination is entirely separate from inquiry into whether the harasser's conduct was serious enough to constitute either *quid pro quo* or hostile environment harassment.[1]

In a case of alleged same-sex harassment, courts first must determine whether the harasser's conduct constitutes sex discrimination. If the answer is "yes," the court must decide whether the challenged conduct meets the applicable standards for either a *quid pro quo* or hostile environment claim. For example, same-sex harassment that is "severe or pervasive" enough to create a hostile environment, *Casiano*, 213 F.3d at 284, might be excluded from the coverage of title VII because it was not discriminatory on the basis of sex. On the other hand, same-sex

---

[1] *See Casiano v. AT&T Corp.*, 213 F.3d 278, 283-84 (5th Cir. 2000) (outlining the differences between these two types of harassment and the methods of proof appropriate to each).

harassment that is indisputably discriminatory might not be serious enough to make out either a *quid pro quo* or hostile environment claim.

In *Oncale*, the Court outlined three ways in which a plaintiff can show that an incident of same-sex harassment constitutes sex discrimination. First, he can show that the alleged harasser made "explicit or implicit proposals of sexual activity" and provide "credible evidence that the harasser was homosexual." *Id.* at 80. Second, he can demonstrate that the harasser was "motivated by general hostility to the presence of [members of the same sex] in the workplace." *Id.* Third, he may "offer direct, comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." *Id.* La Day alleges only the first type.

The present case raises an important issue of first impression for this court: What kind of proof constitutes "credible evidence that the harasser was homosexual"? *Id.* The *Oncale* Court gave no guidance on this point: "The Court's focus [in *Oncale*] was on what the plaintiff must ultimately prove rather than the methods of doing so." *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1009 (7th Cir. 1999).[2]

Two other circuits, the Seventh and Ninth, have addressed this issue to a limited degree.[3]

The Seventh Circuit has held that there was sufficient evidence of homosexuality to get past summary judgment where the following facts were present:

> There is evidence in the record suggesting that Jemison's harassment of Shepherd was borne of sexual attraction. Recall that the alleged harassment began with Jemison remarking a number of times that Shepherd was a "handsome young man." Subsequently, in one of the more graphic encounters between the two men, Jemison "rubbed himself into an erection" while Shepherd was laying on his stomach with cramps, and Jemison urged Shepherd to turn over, lest he "crawl up on top of [Shepherd] and fuck [him] in the ass." Jemison remarked to Shepherd another time that

---

[2] This matter apparently is also one of first impression under Louisiana anti-discrimination law, for we have not been able to discover applicable post-*Oncale* Louisiana precedents that address the issue of proof of the harasser's homosexuality.

[3] The issue has also been addressed to an even
(continued...)

---

[3] (...continued)
more limited extent in three district court opinions, two of them unpublished and none of them very helpful in resolving the present case. *See West v. Mt. Sinai Med. Ctr.*, 2002 U.S. Dist. LEXIS 6123, at*5 (S.D.N.Y. Apr. 9, 2002) (holding that there was not adequate proof of homosexuality where a supervisor repeatedly made friendly gestures to a same-sex subordinate, such as bringing her food, but did not engage in "any hint of sexual innuendo"); *English v. Pohanka, Inc.*, 190 F. Supp. 2d 833, 846 (E.D. Va. 2002) (holding that summary judgment was justified in a case where the plaintiff's sole proof of the harasser's homosexuality was the victim's "subjective belief that [the harasser] was gay" and where numerous co-workers denied this claim); *Merritt v. Del. Riv. Port Auth.*, 1999 U.S. Dist. LEXIS 5896, at*10 (E.D. Pa. Apr. 20, 1999) (holding that "disputed facts exist to suggest that [the alleged harasser] might be sexually oriented towards men" but declining to "recit[e] details" of the evidence supporting this conclusion).

"[a] man can come if he's fucked in the ass." Finally, on the occasion that Shepherd came to work complaining of soreness, Jemison offered to make him feel better by giving him "a nice hot shower."

Although none of these incidents necessarily proves that Jemison is gay, the connotations of sexual interest in Shepherd certainly suggest that Jemison might be sexually oriented toward members of the same sex.

*Id.* at 1009-10 (citations omitted, brackets in original).

In a case with a considerably less unequivocal fact pattern, the Ninth Circuit upheld a summary judgment where the alleged "sexual harassment consisted of, among other things being grabbed in the crotch and poked in the anus on numerous occasions, being forced to look at pictures of naked men having sex while . . . coworkers looked on and laughed, being caressed, hugged, whistled and blown kisses at, and being called 'sweetheart' and 'Muneca.'" *Rene v. MGM Grand Hotel, Inc.*, 243 F.3d 1206, 1207 (9th Cir.), *pet. for reh'g en banc granted*, 255 F.3d 1069 (9th Cir. 2001). The court held that the plaintiff "has presented no evidence that any of his harassers were homosexual, not that they were in any way motivated by sexual desire. On the contrary, evidence presented by [the plaintiff] suggests not that they desired him sexually, but rather that they sought to humiliate him because of his sexual orientation." *Id.* at 1209. The plaintiff, in fact, had testified that he thought he was being harassed "because he is

gay." *Id.* at 1207.[4]

The present case falls somewhere in between *Shepherd* and *Rene*. Craft's possible sexual interest in La Day was not as ongoing and extensive as was that of the alleged harasser in *Shepherd*. Unlike the harasser in *Shepherd*, Craft did not explicitly state his desire to have sexual relations with the victim, nor did he make anywhere near as many physical gestures suggesting such interest. He did, however, touch La Day in a sexual manner, while the harasser in *Shepherd* did not touch the plaintiff.

On the other hand, the evidence of homosexual interest is significantly greater in this case than in *Rene*. There is no evidence that the harassment of La DaySSunlike that of the plaintiff in *Rene*SSwas motivated by the plaintiff's putative homosexuality or by some factor other than sexual attraction.[5] To the contrary, Craft seems to have been angered by La Day's apparent *heterosexuality*, as evidenced by his comment that he was "jealous" of La Day's girlfriend.

It is of course possible that Craft was sim-

---

[4] *Rene* was argued and submitted to the en banc court on September 25, 2001. The question under review, according to the Ninth Circuit's website, is as follows: "Do numerous sexual assaults of an openly gay employee by male co-workers over the course of more than two years of employment constitute a hostile work environment and discrimination on the basis of sex, after . . . *Oncale* . . .?"

[5] In fact, if the proper analysis is used, the sexual orientation of the allegedly harassed employee (the plaintiff) plays no part in these cases. Only the sexual orientation of the *harasser* is relevant in cases of same-sex harassment.

ply mocking La Day; on summary judgment, however, we must assume the facts to be as alleged by [the plaintiff]." *Oncale*, 523 U.S. at 76. Viewed in that light, the remark suggests that Craft was "jealous" of La Day's girlfriend because he had a sexual interest in him. A fact finder ultimately will have to decide which side has the greater weight of the evidence.

It is not possible for us to specify all the possible ways in which a plaintiff might prove that an alleged harasser acted out of homosexual interest in him. Nonetheless, there are two types of evidence that are likely to be especially "credible" proof that the harasser may be a homosexual.

The first is evidence suggesting that the harasser intended to have some kind of sexual contact with the plaintiff rather than merely to humiliate him for reasons unrelated to sexual interest. The second is proof that the alleged harasser made same-sex sexual advances to others, especially to other employees. This approach conforms with the admonition that "'[t]he critical issue . . . is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" *Oncale*, 523 U.S. at 80 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring)). A harasser may well make sexually demeaning remarks and putdowns to the plaintiff for sex-neutral reasons, as in *Rene*, but he is far less likely to make sexual *advances* without regard to sex.[6]

_____

[6] The exception may be a bisexual harasser who is willing to make unwanted advances to both men and women on an equal basis. The difficult question of the status of bisexual harassers was not addressed in *Oncale*. There is no evidence or claim
(continued...)

Here we have evidence of sexual advances both to the victim and to other employees. Undoubtedly there is credible evidence of Craft's sexual interest in La Day. It is certainly possible that Craft was simply trying to humiliate La Day for reasons unrelated to any sexual interest and that he is not a homosexual. When we view the summary judgment evidence in the light most favorable to La Day (the nonmovant on summary judgment), however, there is credible evidence that Craft is a homosexual and that he was making sexual advances. His remark that he was "jealous" of La Day's girlfriend, combined with his poking of La Day's anus, easily is susceptible of that interpretation. Moreover, Craft's later hostility toward La Day, exemplified by his spitting tobacco at him, plausibly could be interpreted as anger over La Day's rejection of his sexual advances.

Importantly, Strange and Johnson credibly claimed that Craft had made sexual overtures to them.[7] Thus, La Day's assertion that Craft

_____

[6](...continued)
that Craft is a bisexual or that he made advances to women similar to those he made to La Day. *Cf. Lack v. Wal-Mart Stores, Inc.*, 240 F.3d 255, 261 (4th Cir. 2001) (upholding summary judgment where harasser made vulgar sexual remarks and gestures to male and female employees on an equal basis).

[7] For details, see the description of the Strange and Thompson incidents in part I of this opinion. Catalyst argues that this evidence should be excluded as hearsay. Clark's notes, however, fall within the business records exception to the hearsay rule. As part of Catalyst's investigation into La Day's allegations against Craft, Clark kept systematic notes in which he recorded Strange's statement to Valentine and Thompson's allegation.
(continued...)

is a homosexual is backed by both types of evidence that we have outlined.

Craft and Catalyst argue that even if there is evidence that Craft is a homosexual, summary judgment should be granted because there is no proof that Craft made sexual overtures to La Day. Nonetheless, if the evidence is viewed in the light most favorable to La Day, it is reasonable to conclude that Craft's touching of La Day's anus, and his earlier expressed jealousy toward La Day's girlfriend, constituted "explicit or implicit

[7](...continued)
Business records such as Craft's notes may be admitted as an exception to the hearsay rule if "[a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness." FED R. EVID. 803(6). "Whether evidence is admissible under Rule 803(6) is chiefly a matter of trustworthiness." *United States v. Wells*, 262 F.3d 455, 459-60 (5th Cir. 2001) (quotations omitted).

There is no reason to doubt the "trustworthiness" of Clark's notes, and they undeniably meet the technical requirements of rule 803(6). Indeed, to the extent that Clark, a vice-president at Catalyst, might have been dishonest in recording these matters, he surely had an incentive to alter his notes to omit evidence of Craft's homosexual advances to employees rather than to accentuate it. The fact that such evidence is manifestly present in the notes reinforces our conclusion that Clark acted in good faith and that the records he kept are trustworthy.

proposals of sexual activity." *Oncale*, 523 U.S. at 80. Accordingly, there is sufficient proof of Craft's homosexuality for La Day's harassment claim to survive summary judgment.

2.

a.

Having provided adequate summary judgment evidence that he was harassed based on sex by virtue of Craft's apparent status as a homosexual, La Day also must show that he was subjected to either *quid pro quo* or "hostile environment" harassment. *Casiano*, 213 F.3d at 283-84. Under *Oncale*, it is sometimes harder to prove that an instance of harassment was motivated by sex discrimination in a same-sex situation than in a circumstance involving alleged opposite-sex harassment.[8] Once sex discrimination has been proven sufficiently to survive summary judgment, however, there is no distinction between same-sex and opposite-sex harassment with respect to the next stage of the inquiry: determining whether the discriminatory action was serious enough to constitute *quid pro quo* or hostile environment harassment.

The issue of *quid pro quo* harassment must be considered first. *Id.* The plaintiff must show that he suffered a "tangible employment action" that "resulted from his acceptance or rejection of his supervisor's alleged sexual harassment." *Id.* at 283. "A tangible employment action constitutes a significant change in employment status, such as hiring,

[8] *See Oncale*, 523 U.S. at 80 (noting that in some cases, claims of same-sex harassment must be backed by "credible evidence that the harasser was homosexual," even though proof of sexual orientation is unnecessary in opposite-sex cases).

firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).

La Day alleges that Catalyst failed to promote him to a higher position, despite his being qualified for it, and that Catalyst "constructively discharged" him. The existence of such a tangible act is, however, in serious doubt. La Day failed to specify to which precise position he should have been promoted. "A tangible employment decision requires an official act of the enterprise, . . . in most cases documented in official company records." *Id.* at 762.

There is no evidence that Catalyst ever made such an "official act" adverse to La Day's employment prospects. *Id.* Even if La Day could prove the existence of a tangible employment action, he does not meet the standards for a *quid pro quo* claim, because he failed to demonstrate the necessary causal "nexus" between his refusal of Craft's alleged advances and the claimed adverse actions. *Casiano*, 213 F.3d at 283. Although La Day eventually left Catalyst because he felt he no longer could work there after the incidents involving Craft, there is no evidence that Craft or anyone else at Catalyst sought to alter his job prospects or to refuse him promotion as a result of his rejection of Craft's advances.

b.

If the plaintiff fails to provide sufficient evidence of *quid pro quo* harassment, he must prove the existence of hostile environment harassment. This requires a demonstration that the alleged harassment, if its existence were to be "proved," was "severe or pervasive." *Id.* at 284.

"'In order to be actionable under [title VII], a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'" *Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 269 (5th Cir. 1998) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)). "Whether an environment meets this standard depends on 'all the circumstances,' including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Faragher*, 775 U.S. at 787).

There is no doubt that Craft's conduct was subjectively offensive to La Day andSSat the very leastSSthere is a disputed question of fact regarding objective offensiveness under the circumstances. There is strong evidence suggesting that Craft's conduct was not the norm at this particular workplace.[9] Furthermore, Craft's conduct was physically "humiliating"; even if not "threatening," it was arguably severe, and there is a disputed question of fact whether it unreasonably interfered with La Day's work performance. *Butler*, 161 F.3d at 269. As a result of Craft's harassment, La Day claims to have experienced physical and psychological difficulties, including severe depression, that impaired his ability to work.[10]

Only the factor of "frequency of the discriminatory conduct" indisputably cuts in

---

[9] See the discussion, *infra*, of Roosevelt Wright's affidavit.

[10] See the description of La Day's depression and other health problems, *supra* part I.

favor of Craft and Catalyst. *Butler*, 161 F.3d at 269. But, to survive summary judgment on a hostile environment claim, a plaintiff need only show that the harasser's conduct was "severe *or* pervasive." *Casiano*, 213 F.3d at 284 (emphasis added). He does not have to prove both. Given that Craft's anal touching and other actions arguably were "severe," they need not have been frequent enough to be pervasive for La Day's claim to get past summary judgment.

Craft's actions, of course, must be evaluated with "an appropriate sensitivity to social context." *Oncale*, 523 U.S. at 82. "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances." *Id.* at 81-82. For example, reasonably foreseeable "male-on-male horseplay" is not actionable. *Id.* at 81. Therefore, "the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'" *Id.* at 81 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

In this context, Craft's behavior was not normal in the Catalyst workplace. According to the affidavit of Catalyst supervisor Roosevelt Wright, sexual joking is not common at the firm, and Wright had never seen any male employee touch another male worker in a sexual manner.

### c.

Despite La Day's success in providing adequate summary judgment evidence of a hostile environment, Catalyst could have obtained summary judgment by establishing an affirmative defense demonstrating that "(1) [it] exercised reasonable care to prevent and correct promptly any such sexual harassment,

and (2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.* Catalyst has not briefed this issue, however, and "contentions not briefed are waived and will not be considered on appeal." *Zeno v. Great Atl. & Pac. Tea Co.,* 803 F.2d 178, 180 (5th Cir. 1986). La Day provided sufficient evidence of a hostile environment to survive summary judgment. A fact finder will have to sort through all the evidence to see whether there was harassment and, if so, whether Catalyst presents sufficient evidence to establish a defense to it.

### B.

La Day asserts a retaliation claim. "A plaintiff establishes a *prima facie* case for unlawful retaliation by proving (1) that she engaged in activity protected by title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996). Even if we assume that La Day suffered "adverse employment action[s]," there is no evidence of a "causal link" between any such action and La Day's complaints against Craft. *Id.* Therefore, we affirm the summary judgment in favor of Catalyst on La Day's retaliation claim.

### IV.

La Day has asserted a state law i.i.e.d. claim against Craft. Under Louisiana law, La Day must prove "(1) that the conduct of the defendant was extreme and outrageous, (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be

certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991).

Even if we assume, *arguendo*, that La Day's claim meets the first two prongs, it runs afoul of the third. There is no evidence that Craft intended to inflict severe distress or that he knew such distress inevitably would occur. Although it certainly was foreseeable that severe emotional distress *might* result from Craft's egregious conduct, it was not "certain or substantially certain" to do so. *Id.* Another person might have been able to shake off Craft's obnoxious advances with little or no lasting distress, or at least without *severe* consequences.[11]

In a case arising from the same incidents addressed in the present litigation, a Louisiana court found against La Day, holding that Craft's conduct did not cause him "extraordinary mental stress." *La Day v. Catalyst Tech.*, *Inc.*, 818 So.2d 64, 68 (La. App. 1st Cir. 2001). Although that case involved a workers' compensation claim rather than a claim of i.i.e.d., the court found that the same standard applied and explicitly cited *White* as the basis for its holding in favor of Catalyst. *Id.* at 68 n.5.

Thus, we must conclude that a Louisiana court would not find in La Day's favor here. "In an instance of interpreting state law, the goal of the federal courts is to try to get the same result that would be reached in the state courts." *Oliva v. Pan Am. Life Ins. Co.*, 448

---

[11] *Cf. White*, 585 So. 2d at 1210 (stressing that "[t]he conduct must be intended or calculated to cause severe emotional distress and not just some less degree of fright, humiliation, embarrassment, worry, or the like").

F.2d 217, 221 (5th Cir. 1971). We therefore affirm the summary judgment on the i.i.e.d. claim.

## V.

La Day asserts a state law tort claim that Catalyst is vicariously liable for Craft's alleged torts against him, including assault, battery, and i.i.e.d. Under Louisiana law, "an employer is liable for a tort committed if, at the time, the employee was acting within the course and scope of his employment." *Baumeister v. Plunkett*, 673 So. 2d 994, 996 (La. 1996). Louisiana courts consider four factors in determining whether this standard for vicarious liability is met:

> (1) whether the tortious act was primarily employment rooted;
>
> (2) whether the violence was reasonably incidental to the performance of the employee's duties;
>
> (3) whether the act occurred on the employer's premises; and
>
> (4) whether it occurred during the hours of employment.

*Id.* at 996-97.

La Day's claim meets the third and fourth factors; the alleged tortious conduct occurred on Catalyst's premises during working hours. It undeniably fails the first two prongs, however. Craft's harassment of La Day was certainly not "primarily employment rooted" and was not "reasonably incidental to the performance of [Craft's] duties. *Id.* Meeting the third and fourth prongs is not in and of itself sufficient to sustain a claim of vicarious

liability.[12]  So, we affirm summary judgment on this issue.

For the reasons we have explained, the summary judgment is AFFIRMED in part and REVERSED in part and REMANDED for further proceedings consistent with this opinion.

---

[12] *See id.* at 997 (noting that "an employer is not vicariously liable merely because his employee commits an intentional tort on the employer's premises during working hours").