United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 21, 2007**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 06-10885
Summary Calendar
_____

KAREN BACON,

                                        Plaintiff - Appellant,

                        versus

EDS,

                                        Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:05-CV-193
_____

Before JOLLY, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

     Karen Bacon sued EDS for retaliatory discrimination under the
Family and Medical Leave Act ("FMLA").  Finding that Bacon failed
to establish the prima facie case for her FMLA claim, the district
court granted summary judgment in favor of EDS.  We affirm.

                                I.

     Bacon was employed by Sabre Corporation in 1993 as a project
librarian.  In 1999, she transferred to a position in voice network
services ("VNS") where she installed and supported electronic voice
mailboxes for other employees, under the supervision of Lorinda

_____

     [*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Crawford.  In the spring of 2001, Bacon received a merit raise and a promotion based on her performance in VNS, as well as an award for solving a difficult voice mailbox problem.  During the time she was employed by Sabre, Bacon never received training in any VNS function other than the installation and support of mailboxes.

In July 2001, EDS bought Sabre and Bacon became an EDS employee.  Bacon requested permission to work from home, and was told by her manager Patrick Burke that such a move could limit her professional development by "pigeonholing" her.  Bacon told Burke she was already "pigeonholed" in her current position.  Her request to work from home was subsequently approved by Steve Hallowell, Burke's manager.

Shortly thereafter, in August 2001, Bacon was injured in a car accident.  She requested and was granted five days of leave, as well as time to pursue physical therapy.  In September 2001, Bacon suffered a heart attack.  She requested and received four days of leave to recover.

In September 2001, EDS began to plan a reduction-in-force ("RIF").  Burke was instructed to rank the members of his group according to their value.  With input from Crawford, Burke drafted an email to Hallowell ranking the seventeen employees under his supervision.  Burke assigned the lowest ranking to Sharon Wildin-Dunn, an administrative assistant who had recently joined the team, explaining that her work could be performed by other team members,

2

if necessary. Burke ranked Bacon sixteenth because, he explained, her skill set was limited to voice mail.

On October 16, 2001, Bacon cut her ankle and requested leave to recover. While on leave for the leg injury, she severed tendons in her hand. She requested several leave extensions, all of which were granted. She ultimately returned to work on December 21. On October 28, while Bacon was on leave, EDS implemented an RIF, terminating Sharon Wildin-Dunn and three other VNS employees who did not report to Burke.

When Bacon returned from leave, she began working from home. In January 2002, EDS decided to conduct a second RIF, resulting in the termination of over one hundred employees. Hallowell was instructed to eliminate four additional positions from the VNS group. After consulting with Burke as to the continued accuracy of the September 26, 2001 ranking, Hallowell decided to eliminate Bacon's position, along with three positions in other groups. Bacon was terminated on January 30, 2002 and her workload was reassigned to Melanie Ainsworth, who had previously shared voice mail support duties with Bacon. Bacon filed suit alleging retaliatory discrimination under the FMLA. EDS filed a motion for summary judgment, which the district court granted. Bacon timely appealed.

## II.

We review the district court's grant of summary judgment <u>de novo</u>. Summary judgment is appropriate when the record demonstrates

3

that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "We construe all facts and inferences in the light most favorable to the nonmoving party ...." Cooper Tire & Rubber Co. v. Farese, 423 F.3d 446, 454 (5th Cir. 2005) (internal quotation omitted). A plaintiff "must present affirmative evidence in order to defeat a properly supported motion for summary judgment," Anderson v. Liberty Lobby Inc., 477 U.S. 242, 257 (1986), which "requires that a plaintiff 'make a showing sufficient to establish the existence of an[y] element essential to that party's case, and on which the party will bear the burden of proof at trial.'" Nowlin v. Resolution Trust Corp., 33 F.3d 498, 501 (5th Cir. 1994) (quoting Celotex v. Catrett, 477 U.S. 317, 322-23 (1986)).

III.

To establish a prima facie case of retaliation, Bacon must demonstrate that she was protected under the FMLA; that she suffered an adverse employment action, and that the adverse employment action was taken because she sought protection under the FMLA. Hunt v. Rapides, Healthcare Sys., 277 F.3d 757, 768 (5th Cir. 2001). There is no dispute that the first two prongs of the prima facie case have been met. In determining whether a causal link has been shown, we have found three factors helpful: (1) the extent of the employee's disciplinary record; (2) whether the employer followed its policies and procedures in dismissing the

4

employee; and (3) the temporal relationship between the protected action and the termination. Nowlin, 33 F.3d at 508. To support her prima facie case, Bacon presented evidence that her low ranking and termination occurred within close temporal proximity to her second and third FMLA leaves, that Crawford's attitude toward her changed after she began to take FMLA leave, and that EDS failed to follow its regular procedures in ranking the employees for the RIF.

As the district court concluded, Bacon's claim fails because she cannot present evidence that her termination was causally linked to her medical leaves of absence. Bacon alleges that Crawford's resentment toward her for taking leave in September and October motivated the low ranking Bacon received in September 2001. Bacon's only evidence of Crawford's alleged change in attitude is her own declaration of January 11, 2005, in which she said that Crawford's "inflection, tone of voice and attitude was cold, heavy and distant as opposed what had been warm, light and friendlier before." The scant strength of this evidence of animus is dissipated by Bacon's deposition testimony of August 29, 2005, in which she stated that she "got along well" with Crawford, that Crawford was "concerned" about her after her accident, and that Crawford worked with her to adjust her schedule so that Bacon could attend physical therapy. Despite Bacon's attempt to reconcile her two accounts, she can point to no place in her deposition testimony in which she testified that Crawford displayed any sort of

5

hostility to her after her leaves.[**] A party cannot "raise an issue of fact simply by submitting an affidavit contradicting [her] own prior testimony ...." Doe v. Dallas Indep. Sch. Dist., 220 F.3d 380, 386 (5th Cir. 2000) (citations omitted).

Bacon's allegation that EDS failed to follow its regular policies and procedures is also unsubstantiated by the evidence she produced at summary judgment. To support this claim, Bacon introduced excerpts from the "EDS Leaders' Guide" and other related documents, which we have reviewed under seal. Bacon does not, however, make any specific allegations as to how EDS violated this protocol with respect to her termination. After reviewing the EDS materials, we agree with the district court's conclusion that the "guidelines are nonbinding and, as can be determined from the summary judgment evidence, were substantially followed by Crawford and Burke."

This leaves only the temporal proximity between Bacon's FMLA leaves of absence and her ranking and termination as support for her claim of a causal link. Temporal proximity is a "significant, although not necessarily determinative, factor" in finding

---

[**] Bacon did complain in her deposition that Crawford was displeased that Bacon was unable to return to work after her final hand injury. She admits, however, that she was not forced to return to work and that she was granted the leave time she needed to recover. Additionally, this injury did not occur until October 2001, after the September 2001 ranking was already completed. Therefore any alleged hostility that Crawford demonstrated after the final leave was not causally related to the low ranking that resulted in her termination.

causation.  Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1092 (5th Cir. 1995).  In this case, however, it is insufficient because the sequence of events preceding Bacon's termination does not give rise to any inference that it was linked to her FMLA leave.

In August and September of 2001, Bacon requested and received two leaves of absence from EDS.  In September 2001, while on her second leave, Bacon received a low ranking in the RIF planning.  This low ranking was based on Bacon's limited skill set, a concern of which she had previously been made aware.  Bacon alleges, however, that this low ranking was given in retaliation for her use of FMLA leave.  She was not, however, terminated on the basis of this ranking despite the fact that she was on her third leave at the time that the first RIF was conducted.  In fact, in the email Burke sent to Hallowell ranking his team, he drew a line below Bacon and above Wildin-Dunn to indicate that he did not wish to eliminate Bacon and "would struggle" if forced to do so.

Bacon's employment thus continued through her third leave of absence, which was extended due to a fourth injury.  When she returned from leave in early January, she was permitted to work from home as she had previously requested.  She was then laid off, based on the September 2001 ranking, as part of a second RIF in which more than one hundred workers were laid off, including four in the VNS group.  She was not replaced.  Bacon provides no coherent explanation of how this series of events demonstrates any

7

link between her FMLA leave and her ultimate termination.  We agree with the district court's conclusion that the "mere fact that Bacon's FMLA leave coincided with a reduction in force does not prove, even prima facie, a case of retaliation."  Because Bacon cannot make out the causation prong of her <u>prima</u> <u>facie</u> case, her retaliation claim fails.

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

8