ACCEPTED
04-14-00746-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
11/5/2015 7:57:29 PM
KEITH HOTTLE
CLERK

No. 04-14-00746-CV

In the Court of Appeals
for the Fourth District of Texas

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
11/5/2015 7:57:29 PM
KEITH E. HOTTLE
Clerk

**ALAMO HEIGHTS INDEPENDENT SCHOOL DISTRICT**,
Appellant,

v.

**CATHERINE CLARK**,
Appellee.

On Appeal from the 285th Judicial District Court
of Bexar County, Texas

## APPELLANT'S MOTION FOR *EN BANC* RECONSIDERATION

**ATTORNEYS FOR APPELLANT**

Robert A. Schulman
Texas Bar No. 17834500
Leonard J. Schwartz
Texas Bar No. 17867000
Bryan P. Dahlberg
State Bar No. 24065113
517 Soledad Street
San Antonio, Texas 78205-1508
Telephone: (210) 538-5385
Facsimile: (210) 538-5384

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................... i

TABLE OF AUTHORITIES ....................................................................................... ii

INTRODUCTION ...................................................................................................... 2

ARGUMENT .............................................................................................................. 3

I.     *Holding pervasive sexually charged harassment as same-sex sex discrimination without a showing of animus based on Clark's gender does not meet the "because of sex" requirement of the Oncale court.* ................. 3

     A.     Sexual comments and conduct without gender animus do not discrimination make." ...................................................... 6

     B.     Clark, a woman, was subject to harassment based on expressions of animosity and juvenile provocations that were also launched at men. ..................................................................... 10

     C.     The Memorandum Opinion establishes an expansive new precedent that fundamentally alters the nature of what constitutes discriminatory same-sex sexual harassment under *Oncale.* .............. 12

II.    *The Memorandum Opinion, left unaddressed, reverses years of precedent and Texas Supreme Court pronouncements discarding unsubstantiated conclusory statements as competent summary judgment evidence.* ............ 13

CONCLUSION AND PRAYER ............................................................................... 19

CERTIFICATE OF SERVICE ................................................................................. 20

CERTIFICATE OF COMPLIANCE ....................................................................... 21

# TABLE OF AUTHORITIES

## CASES

*Bacon v. EDS*
219 Fed. Appx. 355 (5th Cir. 2007) ................................................ 14, 17, 18

*Davis v. Coastal Int'l Sec., Inc.*
275 F.3d 1119 (D.C. Cir. 2002)..................................................................... 8

*E.E.O.C. v. Boh Bros. Constr. Co., L.L.C.*
731 F.3d 444 (5th Cir. 2013) .......................................................... 7, 12, 13

*English v. Pohanka of Chantilly, Inc.*
190 F. Supp. 2d 833 (E.D. Va. 2002). ......................................................... 11

*Foreman v. Whitty*
392 S.W.3d 265 (Tex. App.—San Antonio 2012, no pet.). ............ 14, 15, 18

*Gumpert v. ABF Freight Sys., Inc.*
293 S.W.3d 256 (Tex. App.—Dallas 2009, pet. denied)............................ 10

*Harris v. Forklift Sys., Inc.*
510 U.S. 17, 25 (1993) ................................................................................. 5

*Holman v. Indiana*
211 F.3d 399 (7th Cir. 2000) ................................................................ 10, 12

*Indest v. Freeman Decorating, Inc.*
164 F.3d 258 (5th Cir. 1999) ....................................................................... 5

*La Day v. Catalyst Tech., Inc.*
302 F.3d 474 (5th Cir. 2002) ............................................................. 7, 8, 10

*Love v. Motiva Enters. LLC*
349 Fed. App'x 900 (5th Cir. 2009) .................................................. 9, 10, 13

*Mission Consol. Indep. Sch. Dist. v. Garcia*
372 S.W.3d 629 (Tex. 2012) ...................................................................... 14

*Oncale v. Sundowner Offshore Servs.*
523 U.S. 75 ...................................................................... *passim*

*Pedroza v. Cintas Corp.*
397 F.3d 1063 (8th Cir. 2005) ........................................ 7, 8, 13

*Texas Parks & Wildlife Department v. Gallacher*
No. 03-14-00079-CV, 2015 WL 1026473
(Tex. App.—Austin 2015)............................................. 14, 18

*Walker v. SBC Servs., Inc.*
375 F. Supp. 2d 524 (N.D. Tex. 2005)...................................... 8, 9

No. 04-14-00746-CV

In the Court of Appeals
for the Fourth District of Texas

**ALAMO HEIGHTS INDEPENDENT SCHOOL DISTRICT**,
Appellant,

v.

**CATHERINE CLARK**,
Appellee.

On Appeal from the 285th Judicial District Court
of Bexar County, Texas

**APPELLANT'S MOTION FOR *EN BANC* RECONSIDERATION**

Appellant Alamo Heights Independent School District ("AHISD") files this motion requesting *en banc* reconsideration of the decision issued in this appeal by a panel of this Court consisting of Justices Angelini, Martinez, and Alvarez ("the *Clark* Panel") on October 21, 2015, holding that Clark sufficiently alleged a prima facie case of sexual harassment and a prima facie case of retaliation under the Texas Commission on Human Rights Act, therefore overcoming AHISD's plea to the jurisdiction, and would respectfully show this Court as follows:

1

# INTRODUCTION

The *Clark* panel affirmed the trial court's denial of AHISD's plea to the jurisdiction challenging Clark's gender discrimination and retaliation claims under the TCHRA. In doing so, the Court held that Clark had met her burden of raising a fact issue as to each of the *prima facie* elements required for both claims. AHISD moves for reconsideration/rehearing *en banc* because the panel's Memorandum Opinion (i) establishes an expansive new precedent that fundamentally alters the nature of what constitutes discriminatory same-sex sexual harassment under TCHRA and Title VII, and the landmark U.S. Supreme Court decision in *Oncale*; and (ii) reverses precedent of this and other reviewing courts, ignoring jurisdictional evidence negating allegations of a causal link between protected activity and termination in support of a retaliation claim. The Court's correction of these errors in the Memorandum Opinion is imperative in order to ensure consistency of the decision of the court with federal and state precedent.

## ARGUMENT

On May 15, 2008, Catherine Clark submitted a 14-page letter to Stephanie Kershner detailing a year's worth of alleged bullying and inappropriate comments by Ann Monterrubio. (Supp. CR, Vol. I. 211-224) Throughout this letter Clark used verbatim quotes from the District's general policy definition of "harassment" to describe Monterrubio's behavior that she found offensive. Clark ascribed several perceived motivations to Monterrubio's behavior, such as Monterrubio's jealousy and her belief that Clark was wealthy and did not need to work. Clark also alleged that Monterrubio bullied her because she did not get along with Clark's daughter, and that Monterrubio treated African American students poorly because she was racist. But throughout this 14-page letter Clark never once alleged that Monterrubio was bullying her because of her gender. *Id.* Rather, Clark alleged that Monterrubio talked trash about "everyone," including three other female coaches and "all the male coaches." *Id.* As demonstrated below and in previous briefing, the Memorandum Opinion erred in holding that Clark has alleged a discriminatory hostile work environment based on her gender.

I. **Holding pervasive sexually charged harassment as same-sex sex discrimination without a showing of animus based on Clark's gender does not meet the "because of sex" requirement of the *Oncale* court.**

In their Memorandum Opinion ("Memorandum Opinion"), the Fourth Court of Appeals Panel ("Panel") liberally construed Clark's factual allegations,

3

accepting as true a litany of offensive sexually oriented remarks alleged to have been directed toward her by defendant's employees. Because Clark is alleging same-sex sexual harassment, the Memorandum Opinion also recognized that the three methods for establishing same-sex sex discrimination described in the U.S. Supreme Court landmark decision of *Oncale v. Sundowner Offshore Services* on this subject, while directive, are not exclusive or exhaustive. Missing, however, from the Panel's analysis is the significant, absolute and unwavering Supreme Court mandate of *Oncale* that: "Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted discrimination . . . *because of* . . . sex." *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81 (1998) (internal quotations omitted) (emphasis added). "The prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the workplace; it forbids only behavior so objectively offensive as to alter the "conditions" of the victim's employment." *Id.* at 81.

Statements and conduct relied upon by Clark and adopted in the Memorandum Opinion are not statements and conduct "because of" Clark's gender, that is, statements and conduct made because Clark is a woman and not a man, and thus, are not statements or conduct "because of sex." Nor were the statements or conduct Clark attributes to her alleged female harasser directed

4

toward women alone as similar sexually-oriented conduct had also been directed toward men. (Supp. CR, Vol. I at 212, 217, 219)

While certainly not acceptable workplace conduct, the actions and speech alleged by Clark simply do not rise to the level of a sexually discriminating hostile environment within the mandatory penumbra of *Oncale*, and to hold them as such revises and reverses U.S. Supreme Court precedent. In the words of Justice Ginsburg, "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring)).)

Properly understanding and applying this important *Oncale* distinction between harassment *about* gender and harassment *because of* gender will maintain continuity between the decisions of Texas courts, the mandate of our U.S. Supreme Court and the anti-discrimination laws, like Title VII and the Texas Commission of Human Rights Act ("TCHRA"), lest those laws be turned into "a general civility code for the American workplace," the exact scenario our courts have strived to avoid. *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 263 (5th Cir. 1999).

**A. Sexual comments and conduct without gender animus do not discrimination make.**

Title VII and the TCHRA do not prohibit harassment per se. Rather, they prohibit discrimination in the terms and conditions of employment based on a person's membership in a protected class, such as gender. As such, harassment that alters the terms and conditions of employment violates Title VII and the TCHRA only when it is gender discriminatory. As the Supreme Court held in *Oncale*:

> Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at "discriminat [ion] ... because of ... sex." We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations. "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed."

*See Oncale*, 523 U.S. at 80.

In the case of mixed gender harassment, the discriminatory motive is obvious (*see Oncale*, 523 U.S. at 81); but in cases where the alleged discrimination is based on same-sex sexual harassment, our courts are left with the more difficult conundrum of determining whether the harassment – the disadvantageous terms or conditions of employment – were visited upon the victim because of the victim's gender.

This very question was addressed by the U.S. Supreme Court in *Oncale*. Under *Oncale*, a court cannot simply determine that same-sex harassment is

6

discriminatory and thus violative of Title VII, because it was "sexual" in nature. *Id.* Rather, a court must consider the possible reasons why a same-sex harasser would harass a member of his or her own protected class. In order for the harassment to be actionable, the underlying reason *must be discrimination*, as opposed to boorishness or general lack of civility. *Oncale*, 523 U.S. at 80. *Oncale* suggested three potential "evidentiary routes" to assist in this determination (*see* discussion of same in AHISD's briefing), and in *EEOC v. BOH Bros.* the Fifth Circuit identified a fourth possibility, which is harassment based on a victim's nonconformance with gender stereotypes.

The harassment alleged here is analogous to examples of nondiscriminatory sexual conduct found in *BOH Brothers*. *BOH Brothers* tells us that when addressing same-sex sexual harassment hostile work environment claims, a workplace environment can well be "hostile" and yet, not "discriminatory": "For example, same-sex harassment that is 'severe or pervasive' enough to create a hostile environment might be excluded from the coverage of Title VII because it was not discriminatory on the basis of sex." *E.E.O.C. v. BOH Bros. Constr. Co., L.L.C.*, 731 F.3d 444, 453 (5th Cir. 2013) (quoting *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 478 (5th Cir. 2002)).

In *Pedroza v. Cintas Corp.,* a failed hostile work environment claim, a female plaintiff claimed that her coworker had repeatedly attempted to kiss her and

had made sexual gestures and comments to her. While the court found evidence that the coworker was "vulgar and boorish" and sought to "antagonize" the plaintiff, the court would not find the existence of same-sex sexual harassment. *Pedroza v. Cintas Corp.,* 397 F.3d 1063, 1066-71 (8th Cir. 2005).

According to Clark, her harassers made frequent sexual remarks to her, including comments about her breasts and buttocks, commenting on her naivety about various sexual practices, while exhibiting aggressive and intimidating behaviors toward her, conduct that the *Oncale* court and other courts, including the Fifth Circuit, have held to be outside the fold of discrimination.

Obscene gestures and comments are "commonplace in certain circles," and more often than not, are nothing more than "expressions of animosity and juvenile provocation." *Davis v. Coastal Int'l Sec., Inc.*, 275 F.3d 1119, 1121 (D.C. Cir. 2002). "A harasser may well make sexually demeaning remarks and putdowns to the plaintiff for sex-neutral reasons." *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 480 (5th Cir. 2002). Clark admits herself that her alleged harasser, Coach Monterrubio, disdained "smug, wealthy, and snotty" Alamo Heights mothers, and claimed that Clark was one of them and should stay home. (Supp. CR, Vol. I at 216).

In the same-sex example of *Walker v. SBC Services, Inc.*, the plaintiff, Walker, was offended by her supervisor's comments related to the supervisor's sex

life, as well as sexually charged conduct such as "simulat[ing] oral sex with a novelty drink" and her supervisor having "removed her blouse at the office to show her new brassiere." *Walker v. SBC Servs., Inc.*, 375 F. Supp. 2d 524, 530 (N.D. Tex. 2005). But, under the guidance of *Oncale,* Walker's same-sex discrimination claim failed because she did not show, except for her own conclusory assertions, that "the comments . . . made by other females, in the presence of only females" constituted discrimination *because* of her sex. *See Walker*, 375 F. Supp. 2d at 536-37. Specifically, she never "contend[ed] that any of the females involved were lesbians or that the comments were related in any way to explicit or implicit sexual proposals, or that the person making the comments was motivated by a hostility to the presence of females in the workplace." *Id.* at 536.

In *Love v. Motiva Enterprises LLC*, a female coworker subjected Love to name calling, unwanted touching, including under her bra strap and underwear, rubbed her breasts against Love, and called her "sorry excuse for a woman" and "failure as a woman." *Love v. Motiva Enters. LLC*, 349 Fed. App'x 900, 902-03 (5th Cir. 2009). The court held that the incidents Love experienced, while "offensive," "inappropriate," and "unacceptable," were "more indicative of humiliating or bullying behavior." *Id.* Furthermore, the harasser "had a poor attitude toward all her co-workers, as documented by negative comments in her personnel file, and a history of name-calling and treating others rudely and

9

disrespectfully." *Id.* 903. Thus, Love's same-sex sexual harassment claim failed summary judgment. *Id.* at 904.

Thus, allegations of actions and language offensive due to their sexual nature are simply not enough to satisfy the third element of a prima facie same-sex case. *See La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 478 (5th Cir. 2002). Ergo, subjecting a same-sex coworker to sexual comments, gestures, vulgar, lewd, boorish, or bawdy language, insults, or banter that would ordinarily offend, aggravate, and provoke, may result in an intolerable work place, but, unless such conduct was motivated by the gender of the recipient, the harassment resulting from that hostility or animosity is not same-sex discrimination under Title VII or the TCHRA. *See Gumpert v. ABF Freight Sys., Inc.*, 293 S.W.3d 256, 261 (Tex. App.—Dallas 2009, pet. denied).

### B. Clark, a woman, was subject to harassment based on expressions of animosity and juvenile provocations that were also launched at men.

"Because Title VII is premised on eliminating discrimination, inappropriate conduct that is inflicted on both sexes, or is inflicted regardless of sex, is outside the statute's ambit." *Holman v. Indiana*, 211 F.3d 399, 403 (7th Cir. 2000). Here we have allegations of nondiscriminatory harassment. The alleged harasser was said to have been clearly vulgar and boorish, freely discussing sexually intimate and offensive topics, but not discriminating between male or female coaches when

engaging in lewd conversations, and engaging in backbiting comments against all faculty members, notwithstanding their gender. (Supp. CR, Vol. I at 219)

While the critical issue in sex discrimination cases "is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed" (*see Oncale*, 523 U.S. at 80), an analysis of the conditions of employment may cause a court to weigh conduct towards male and females differently. In *English v. Pohanka of Chantilly, Inc.*, the same-sex male harasser also bothered his female coworkers; however, the court found that evidence that men were harassed more severely would not be dispositive, since the two sexes rarely shared the same workspace. *English v. Pohanka of Chantilly, Inc.*, 190 F. Supp. 2d 833, 847 (E.D. Va. 2002).

As in the instant matter, the harassing coworker in *English* was known for his irritating and vulgar comments, and the other male workers in the plaintiff's office tended to encourage horseplay, so the court found it was unreasonable to view the conduct towards the plaintiff's sexual harassment. *Id.* at 844-45. Similarly, Clark's alleged harasser's workspace in the Girls' Athletic Department was shared with other women coaches including Clark, so they all endured the bulk of her vulgarity. But, just as in *English*, the alleged harasser in the instant matter also engaged in lewd conversation with both male and female coaches and

11

made of fun of all coaches, inflicting her inappropriate conduct on both sexes. *See Holman* v. Indiana, 211 F.3d 399, 403 (7th Cir. 2000); Supp. CR, Vol. I at 219.

**C. The Memorandum Opinion establishes an expansive new precedent that fundamentally alters the nature of what constitutes discriminatory same-sex sexual harassment under *Oncale*.**

The Memorandum Opinion, citing only to *Oncale* and *BOH Bros* invents a fifth way to establish actionable same-sex sexual harassment, harassment when the alleged harassment exists as the result of caustic and lewd remarks regarding a plaintiff's anatomy. *See* Memorandum Opinion, at p. 10.

Significant and importantly, left unaddressed, the Memorandum Opinion does precisely what *Oncale* and its progeny warn against, attaching liability to conduct with sexual connotation absent gender discrimination and thus, creating a general civility code for the workplace, out of step with Federal Court guidance.

Although the three routes identified by *Oncale* are not exhaustive, and the Fifth Circuit has recognized a fourth route in *EEOC v. BOH Bros* (which is about gender stereo-type nonconformity, and thus not applicable), the tie that binds each of these routes is that they demonstrate that a same-sex victim was harassed ***because of*** his or her gender. The Memorandum Opinion invents an entirely new route that is unmoored from the "critical issue" identified by Justice Ginsburg: that a plaintiff be exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed. *See Oncale*, 523 U.S. at 80.

12

In Clark's deposition and briefing, she asserted that her alleged harasser's early harassment consisted of sexual advances. In doing so, Clark attempted to proceed under the first route identified in *Oncale*, but under this route, Clark ultimately fails because there is no evidence, not even Clark's unsupported allegation, that Coach Monterrubio was homosexual. Under these same circumstances, the plaintiffs' claims in *Love* and *Pedroza* were dismissed. *See Love*, 349 Fed. App'x at 902-03; *Pedroza*, 397 F.3d at 1066-71. As such, the Memorandum Opinion, ventures far outside of *Oncale* and *BOH* inventing a new and unsupported avenue to same-sex hostile environment sexual harassment in holding that comments about a plaintiff's anatomy are discrimination based on gender.

Clearly and understandably, it was the pervasiveness of the harassment as alleged by Clark that led to this misapplication of guiding authorities. Nonetheless, Clark's allegations cannot support a finding that the harassing conduct she alleges was due to her specific gender, that is, conduct suffered because she is, in fact, a woman, the *coup de grace* of same-sex Title VII sexual harassment.

II.     **The Memorandum Opinion, left unaddressed, reverses years of precedent and Texas Supreme Court pronouncements discarding unsubstantiated conclusory statements as competent summary judgment evidence.**

The Memorandum Opinion's acceptance of Clark's allegations that her disciplinary record prior to engaging in protected activity was "exemplary" and

that her employer "failed to follow its own policy in firing her" may not be considered as jurisdictional evidence because they are conclusively negated by the jurisdictional evidence on file in this case. *See Foreman v. Whitty*, 392 S.W.3d 265, 273 (Tex. App.—San Antonio 2012, no pet.) (holding that unsubstantiated conclusory statements are not competent summary judgment evidence); *see also Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012) (explaining that if evidence is undisputed or fails to raise a fact question on a jurisdictional issue, the claim must be dismissed).

As the Memorandum Opinion correctly cited, in examining to determine the existence of a *prima facie* retaliation claim, the requisite causal nexus between a plaintiff's protected activity and an adverse employment action can be established by circumstantial evidence of: (1) the extent of the employee's disciplinary record; (2) whether the employer followed its policies and procedures in dismissing the employee; and (3) the temporal relationship between the protected action and the termination. *See* Memorandum Opinion at p. 12, citing *Bacon v. EDS*, 219 Fed. Appx. 355, 357 (5th Cir. 2007); *Tex. Parks & Wildlife Dep't v. Gallacher*, No. 03-14-00079-CV, 2015 WL 1026473, at *6 (Tex. App.—Austin Mar. 4, 2015, no pet.) (opin. on reh'g, mem. op.).

Here, because Clark's termination occurred eight months after she filed her EEOC charge, the Court properly recognized that "[t]aken alone, the significant

14

time period between the filing of the EEOC charge and her termination fails to raise a fact issue on causal connection." *See* Memorandum Opinion at p. 14.

However, the Memorandum Opinion incorrectly found that Clark's remaining allegations were sufficient to demonstrate a causal link between her EEOC charge and termination. *Id.* Specifically, the Memorandum Opinion held that Clark presented evidence that her disciplinary record prior to engaging in protected activity was "exemplary" and that AHISD "failed to follow its own policy in firing her." *See* Memorandum Opinion at pp. 14-15.

In accepting these allegations as "true" for the purposes of deciding jurisdiction, the Opinion embarks on an extreme departure from black letter Texas common law requiring a court to disregard summary judgment allegations conclusively negated by the jurisdictional evidence. *See Foreman*, 392 S.W.3d at 273.

Contrary to findings in the Memorandum Opinion, jurisdictional evidence cited below conclusively established that Clark's record was not "exemplary" prior to her filing an EEOC charge.

The Memorandum Opinion accepted as true Clark's assertion that her record was "exemplary" prior to filing her EEOC charge and that she did not receive a negative evaluation until 2009. *See* Memorandum Opinion at pp. 14-15. In accepting this "truth" the Opinion ignored undisputed negating evidence that her

15

supervisor had addressed with her significant performance deficiencies prior to her EEOC filing. (Supp. CR, Vol. I. 181-182). Clark's May 15, 2008 written complaint acknowledges a March 2008 reprimand for her having continued to take her daughter into the workplace. (Supp. CR, Vol. I. 216-17). Nor did her allegation of having a record of "exemplary" performance, accepted as "true" in the Opinion, account for uncontroverted evidence that prior to her EEOC charge her supervisor had been addressing and attempting to correct plaintiff's performance deficiencies as they related to her relationship with her peers, and giving her a directive in the purported "exemplary" performance appraisal that Clark needed to address deficiencies in professional communication. (Supp. CR, Vol. I. 181-182, 399-400; *see also* Appellant's Reply Brief, pp. 4-7).

Nor did the Opinion account for uncontroverted jurisdictional evidence that in the month before she filed her charge, Clark's supervisors met with her on numerous occasions to address and remediate significant performance issues, including: (i) failure to follow previous directives to not leave her children unattended at work; (ii) performance concerns over her duties; (iii) failure to work cooperatively with others; and (iv) failures to comply with AHISD's policies regarding the process for filing workplace grievances. (Supp. CR, Vol. I. 227-231; *see also* Appellant's Brief, pp. 13-15).

Most significantly, the Memorandum Opinion apparently relied on Clark's bare and well-controverted allegations that her employer had failed to follow its policies in terminating her employment. *See* Memorandum Opinion at p. 13. A thorough review of the submitted records fails to reveal a single piece of evidence that Clark's employer failed to follow both policy and established law *in dismissing* her.

Rather, the record and a mere reading of the polices cited reveals that the purported policy failing cited in the Memorandum Opinion had nothing to do with the policy or procedures applicable to Clark's termination, but instead referred to her supervisor's requirement in Clark's growth plan that she "timely report her workplace concerns." Memorandum Opinion at p. 15. The result is that quite contrary to the Memorandum Opinion, Clark did not provide any competent evidence that her employer had failed to comply with its policies and procedures in terminating her employment, a process, set in stone through school district policies and long-standing law (*see* Appellant's Reply Brief, pp. 18-22), a process that was, pursuant to the only competent evidence offered to the Panel, followed to the letter.

The relevant facts of both cases cited in the Memorandum Opinion further confirm that, in order to serve as circumstantial evidence of retaliation, an employer's policy failures must relate to the policies and procedures for terminating the employee. In *Bacon v. EDS*, 219 Fed. Appx. 355, 357 (5th Cir.

17

2007), the court considered a plaintiff's allegations that her employer violated its protocols for ranking employees during a Reduction-in-Force when she was given a low ranking. *See id.* at 356-57. Similarly in *Gallacher*, the court considered a plaintiff's allegations that her employer violated its policies in failing to grant her sufficient sick-pool leave when she was terminated at the end of that leave. *See Gallacher*, 2015 WL 1026473, at *6.

In an unsupported expansion of the *Bacon* and *Gallacher* holdings, the Memorandum Opinion holds that Clark's supervisor's alleged misapplication of AHISD's grievance policy responding to her sexual harassment complaint, is evidence of retaliation. But, the policy referenced had nothing to do with the procedures followed by AHISD in terminating Clark's employment. This expansive holding sets a dangerous precedent in diverging from prior federal and state holdings that ignores controverted allegations and extends the reach of the authorities that recognize only a violation of dismissal policies as evidence of retaliation. *See Foreman*, 392 S.W.3d at 273; *see also Bacon* and *Gallacher, supra.*

In that nearly all employers have a policy forbidding retaliation, should the Memorandum Opinion remain as the decision of this Court, a plaintiff's allegation that such policy had been violated would always support an inference of causation. In addition to an unprecedented expansion of the authorities cited, the

Memorandum Opinion's holding would expose every plaintiff's case to proof of retaliation by circuitous reasoning.

## **CONCLUSION AND PRAYER**

For such reasons, as well as those briefed in AHISD's Brief and Reply Brief, the Memorandum Opinion's holding that Clark has established each element of her same-sex hostile work environment and retaliation claims is incorrect, and must be corrected by this Court on *en banc* review. If left undisturbed, the Memorandum Opinion sets expansive new precedent that deviates from prior federal and state opinions in Title VII and TCHRA cases. We respectfully request the Court grant this motion for *en banc* reconsideration and issue an opinion correcting the Memorandum Opinion's errors.

Respectfully submitted,

**SCHULMAN, LOPEZ, & HOFFER, LLP**

Robert A. Schulman
Texas Bar No. 17834500
Email: rschulman@slh-law.com
Leonard J. Schwartz
Texas Bar No. 17867000
Email: lschwartz@slh-law.com
Bryan P. Dahlberg
Texas Bar No. 24065113
Email: bdahlberg@slh-law.com
517 Soledad Street
San Antonio, Texas 78205-1508
Telephone:  (210) 538-5385
Facsimile:   (210) 538-5384

**ATTORNEYS FOR APPELLANT**

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of November 2015, a true and correct copy of the foregoing document has been delivered by email to counsel of record for Appellee in this proceeding as follows:

Mr. Matthew R. Pearson, Gravely & Pearson, L.L.P., 425 Soledad Street, Suite 600, San Antonio, Texas 78205,
Email: mpearson@gplawfirm.com.

Mr. Brendan K. McBride, McBride Law Firm, 425 Soledad Street, Suite 600, San Antonio, Texas 78205,
Email: brendan.mcbride@att.net.

Attorney for Appellant

20

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I hereby certify that Appellant's Motion for *En Banc* Reconsideration contains 4031 words (excluding the caption, table of contents, table of authorities, signature, certificate of service, and certificate of compliance).

I further certify that this is a computer-generated document created in Word for Mac, using 14-point typeface for all text, except for footnotes, which are in 12-point typeface. In making this certificate of compliance I am relying on the word count provided by the software used to prepare this document.

I understand that a copy of this motion may be posted on the Court's website and that the electronically filed copy of the motion becomes part of the Court's record.

Copies have been sent to all parties associated with this case.

Robert A. Schulman